***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications to "Finding of Fact Numbers 10, 12 and 15"; "Conclusion of Law Number 2"; and "Award Number 1"; and additions of "Findings of Fact Numbers 8 and 16".
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Hartford Insurance Company of the Mid-West is the carrier on risk.
4. Plaintiff's average weekly wage is $370.14 yielding a compensation rate of $246.77.
5. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 2.
6. The issues before the undersigned are: (i) whether plaintiff sustained a right wrist injury by accident or occupational disease within the course of her employment with defendant-employer on or about August 11, 1999; (ii) whether plaintiff's depression and anxiety are related to plaintiff's injury or occupational disease; and (iii) if so, what compensation, if any is due plaintiff?
 *********** EVIDENTIARY RULINGS
The objections raised in the deposition of John Gaul, M.D., and Alan Gorrod, CEES, are OVERRULED.
 ***********
Based upon all of the evidence produced at the hearing, the undersigned makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was thirty-two (32) years old and had obtained a high school degree. Plaintiff has had prior work experience in fast food and as a cloth inspector.
2. Plaintiff was a cloth inspector for defendant-employer. As part of her job responsibilities, plaintiff was required to lift a roll of cloth that weighted approximately forty (40) pounds and put it on the bottom of a machine, pull the loose end of the rolled cloth through the machine and attach at the top to a steel bar that ran across the top of the machine. Plaintiff would observe the cloth carefully as it was rolled across the machine. When the cloth had finished rolling, plaintiff would remove the roll of cloth from the top of the machine and put it on the bottom. Plaintiff would replace the bar at the top and then attach cloth to it again so that it could be run through the machine.
3. If plaintiff found an imperfection in the cloth, plaintiff would stop the machine and either mark or cut out the imperfection. When cutting the imperfection plaintiff would use her right hand. After cutting the imperfection, plaintiff would restart the roll at the top again. Plaintiff would also complete reports pertaining to the cloth she had inspected and any flaws that had been observed.
4. Plaintiff estimated that it would take approximately between ten (10) to twenty (20) minutes to inspect a roll of cloth. Plaintiff performed this job responsibility forty (40) hours a week for four (4) years.
5. Plaintiff began to develop problems with her right wrist and was first seen by Scott Smith, M.D. Dr. Smith had referred plaintiff to John Gaul, M.D. Dr. Gaul ran tests to determine whether plaintiff's problems were a result of ganglion cysts. Plaintiff did not have ganglion cysts.
6. Dr. Gaul ordered nerve conduction studies to be performed that indicated moderately severe carpal tunnel syndrome more significantly in plaintiff's right hand than the left.
7. Dr. Gaul performed a right wrist carpal tunnel syndrome release on February 25, 2000. Plaintiff's wrist improved somewhat, however, plaintiff still has post-operative stiffness and pain.
8. Plaintiff returned to work on May 1, 2000. She worked a full schedule at full wages until August 16, 2000.
9. Dr. Gaul released plaintiff on August 14, 2000 at maximum medical improvement and gave her restrictions of no lifting greater than ten (10) pounds. Plaintiff was not to push or pull anything greater than twenty (20) pounds. These restrictions were to be in place for at least a year after the surgery.
10. The knitting department of defendant-employer was moved from the Albemarle plant to the Wadesboro plant. The job offered to plaintiff was at the Wadesboro plant.
11. Plaintiff declined this job because she did not have transportation to Wadesboro and the company did not offer a pay increase as result of this transfer.
12. Defendant-employer did not offer another job within plaintiff's restrictions in the Albemarle facility. Plaintiff undertook an extensive but unsuccessful job search.
13. Dr. Gaul indicated plaintiff's job contributed to the carpal tunnel syndrome and the synovitis on the right and tendonitis on the right side.
14. Dr. Gaul further indicated plaintiff's work activities placed plaintiff at an increased risk of developing carpal tunnel syndrome than the general public.
15. Dr. Gaul has assigned a twenty (20%) percent permanent partial disability rating to plaintiff's right hand and has not assigned any permanent partial disability to the left hand at this time.
16. Al Gorrod, a certified ergonomic evaluator, performed an ergonomic job analysis of plaintiff's job at defendant-employer on May 11, 2001 and concluded the inspector job did not place plaintiff at an increased risk of developing carpel tunnel syndrome. The Commission gives little weight to his opinion in this case.
17. Plaintiff developed carpal tunnel syndrome and synovitis to the right wrist arising out of and in the course of her employment with defendant-employer.
18. Plaintiff was placed at an increased risk of developing carpal tunnel syndrome as result of her employment with defendant-employer. Plaintiff was at an increased risk of developing carpal tunnel syndrome than the member of the general public not so employed.
19. Defendants paid plaintiff short-term disability compensation in the amount of $1,542.43.
20. Plaintiff has also received unemployment benefits at a rate of $193.00 per week from November 2000 through March 2001. Defendants are entitled to a credit for the unemployment payments as well as the short-term disability payments.
 ***********
Based upon the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's development of carpal tunnel syndrome was due to causes and conditions of and peculiar to her employment with defendant-employer and is not an ordinary disease of life to which the general public not so employed is equally exposed, and is, therefore, an occupational disease. N.C.G.S. § 97-53(13).
2. As result of her compensable occupational disease, plaintiff is entitled to total disability compensation at a rate of $246.77 from February 25, 2000 to May 1, 2000 and from August 16, 2000 and continuing until further order from this Commission. N.C.G.S. § 97-29.
3. Plaintiff is entitled to receive all medical treatment related to her compensable occupational disease so long as such treatment should provide relief, effectuate a cure or lessen plaintiff's period of disability. N.C.G.S. § 97-25.
4. Defendants are entitled to a credit for the short-term disability paid to plaintiff as well as unemployment benefits. N.C.G.S. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For her compensable contraction of an occupational disease, defendant shall pay total disability compensation from February 25, 2000 until May 1, 2000 and from August 16, 2000 and continuing until further order from this Commission at a rate of $246.77. Said compensation is subject to an attorney's fee in Paragraph 4.
2. Defendants shall pay all medical expenses incurred by plaintiff as result of her compensable contraction of an occupational disease.
3. Defendants shall receive a credit for short-term disability paid and unemployment benefits.
4. A reasonable attorney's fee of twenty-five (25%) percent of compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five (25%) percent of lump sum due plaintiff under Paragraph 1 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel. In regards to all future compensation, plaintiff's counsel shall receive the equivalent of every fourth check.
5. Defendants shall pay the costs.
This the ___ day of October 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DCS/bjp